UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID BLANTON,

No. 2:09-cv-01832-MCE-CKD

        Plaintiff,

   v.

MEMORANDUM AND ORDER

COUNTY OF SACRAMENTO;
SACRAMENTO COUNTY SHERIFF'S
DEPARTMENT; CHRIS BITTLE;
DONALD BRICKER; and CRYSTAL
FISHER BRADNAX,

        Defendants.

----oo0oo----

    Before the Court is Defendants' Motion for Summary Judgment and Summary Adjudication (ECF No. 45). For the reasons that follow, the Motion will be granted in full.

///

///

///

///

///

1

1

**BACKGROUND**[1]

2

3     Plaintiff David Blanton ("Blanton") was a licensed Adult

4 Residential Administrator, who operated an adult residential care

5 facility. (First Amended Complaint ("FAC"), ECF No. 9,

6 Paragraph 12). Defendant Crystal Fischer Bradnax ("Fischer") was

7 employed by Blanton at his facility. (<u>Id.</u> at ¶ 13.) Either late

8 at night on July 3rd or early in the morning of July 4th, 2007,[2]

9 Blanton caught Fischer stealing cleaning products from the care

10 facility and spoke with her about the thefts. (<u>Id.</u>) Fischer was

11 sent home and placed on administrative leave without pay. (<u>Id.</u>)

12     Within hours, Fischer reported to the Sacramento County

13 Sheriff's Department ("SCSD") that Blanton had brandished and

14 accidentally discharged a firearm inside the residential home.

15 Specifically, she informed Officer Kenneth King ("Officer King")[3]

16 of the incident. (<u>Id.</u> at ¶ 15.) Officer King then contacted his

17 supervisor, Defendant Officer Donald Bricker ("Officer Bricker")

18 and requested a welfare check on the residents of the facility.

19 (Plaintiff's Response to Defendants' Statement of Undisputed

20 Facts ("PR-SUF"), ECF No. 51, Attachment 1, ¶ 9).

21 ///

22

23     [1] The following facts are the Court's determination of what
is undisputed based on its review of both Plaintiff's and
24 Defendants' Statements of Facts and the Records cited therein.
For the purposes of this motion, all reasonable inferences are
25 drawn in favor of the Plaintiff.

26     [2] All forthcoming dates are from the year 2007 unless
otherwise stated.
27

28     [3] Kenneth King was dismissed with prejudice from all causes
of action. (ECF No. 57., Stipulation and Order.)

On July 4th, Officer Bricker and his Deputy Officer, Defendant Chris Bittle ("Officer Bittle"), went to the facility, interviewed Blanton and investigated his care facility. (Id. at ¶ 11.)  During the investigation, Officer Bricker took notes of his investigation and his interview with Blanton.  (PR-SUF at ¶ 18.)

According to Blanton, he did not admit to the police officers to have fired a gun in the facility.  (Id. at ¶ 12.) However, the police officers investigating the incident's reports indicate that Blanton did, in fact, admit to having accidentally discharged the firearm.[4]

In Officer King's July 4, 2007,report of his investigation of the incident, he reported that Fischer stated that, "[w]hile we were talking, Blanton picked up the gun and was putting the magazine in the handle when all of a sudden the gun went off.

///

///

---

[4] Blanton objects to the contents of the police reports on hearsay grounds, but does not dispute that the police arrived, investigated, and interviewed witnesses.  The Court overrules Blanton's hearsay objection to the police reports contained in ECF No. 49, Ex.2.  The police officers' statements and observations recorded in a police report are admissible, as is the summary of Blanton's statement made to Officer Bricker under the public-records hearsay exception contained in Fed. R. Evid. 803(8) and Cal. Evid. Code § 1280.  See, e.g., Colvin v. United States, 479 F.2d 998, 1003 (9th Cir. 1973) (Personal observations of police officers contained in the police reports are generally admissible); Rupf v. Yan, 85 Cal. App. 4th 411, 430 n.6 (Cal. App. 2000) (noting that "a police officer's report is admissible under Evidence Code section 1280 if it is based upon the observations of a public employee who had a duty to observe facts and report and record them correctly.  []  Statements independently admissible, such as a party admission, contained in a police report are similarly admissible, despite their hearsay character."  (citations omitted)).

The bullet went through the entertainment center in the front room...” (Request for Judicial Notice[5] (“RJN”), ECF No. 49, Ex. 2 at 5.)   Consistent with Fischer’s description of the event, according to Bricker’s report,

> Blanton admitted that he was in the home earlier checking up on one of his employees and when he was leaving the house he picked up his gun from a cabinet shelf and the gun fired one round into the wooden entertainment center.  Blanton showed us where the bullet struck the wood entertainment center and showed us the wood debris on the floor. It appeared a single bullet struck the wood cabinet system and did not exit the house or travel into any other area of the home.

(Id. at 8-9.)   Officer Bittle also included a summary of Blanton’s statement to him, in which Blanton allegedly said, among other information about the incident, that:

> After I arrived tonight I placed the gun on the shelf of the entertainment center and removed the magazine to make it safe, I had the magazine in my pocket and the gun was just laying on the shelf by itself without a holster.

---

[5] Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts ‘capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned’), Defendants request the Court take judicial notice of several documents. (Request for Judicial Notice (“RJN”) (ECF No. 49, Att. 1-4.)  Specifically, Defendants ask the Court to take judicial notice of the: (1) Demand for Jury Trial, dated October 25, 2011, and signed by Attorney for Plaintiff (RJN, Att. 1); (2) Incident/Information Report, dated July 4, 2007, signed by Defendant Bricker and recorded in the Sacramento County Sheriff’s Department, Report Number 07-0036423SD (Id., Att. 2); (3) Order from the Department of Social Services Hearing, signed by Administrative Law Judge Marilyn A. Woollard and dated March 31, 2008 (Id., Att. 3); (4) Transcript for the Order from the Department of Social Services Hearing, dated February 7, 2008, and transcribed and signed by Heather R. Coiner (Id. at Att. 4). Defendants’ requests are unopposed and are the proper subject of judicial notice. See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record).  Accordingly, Defendants’ Request for Judicial Notice, (ECF No. 49, Att. 1-4.), is granted.

1

2        I picked the gun up and I must have had my finger on
         the trigger because the gun fired one round.  The
3        bullet hit the wood entertainment center and caused
         wood to splinter onto the floor.

4        I was really surprised the gun fired because I had
         removed the Magazine and I didn't think it would fire
5        without it, but I guess I was wrong.  After the gun
         fired my worker Crystal became pretty shaken up and I
6        could tell she was concerned.  I told her to take the
         rest of the night off and I would stay at the home in
7        her place.  She left and didn't say anything.

8        None of the residents were awake when the gun fired and
         none woke up after the incident.  The bullet hit the
9        wood and stayed in the frame of the cabinet.
         After Crystal left I cleaned up a little, put my gun
10       away and went to bed.

11       I did not point the gun towards Crystal and I never
         picked it up to show it to her I'm sure she knows I
12       have the gun because I bring it with me every time I
         come to the house.

13

14       According to Defendants Officers Bittle and Bricker as well

15   as the summary of Blanton's statement, Blanton informed them that

16   the gun was in his bedroom.  (Bricker Decl. at ¶ 21.)   When they

17   retrieved the gun after asking for Blanton's permission, they

18   found it unsecured.  (Id. at ¶ 22.)

19       Officer Bricker and Officer Bittle concluded that Blanton's

20   gun had discharged, but that no crime had been committed.

21   (Bricker Decl. at ¶ 23.)   After Officer King spoke with Fischer,

22   he created the incident report.[6]  (Id. at ¶ 23-24.)   Likewise,

23   Officer Bricker completed his report within 24 hours after the

24   interview with Blanton and the investigation of Blanton's care

25   facility.  (Id. at ¶ 25.)

26

27       [6] Incident reports written by police officers are designed
28   for record keeping and not for prosecution proceedings.  (PR-SUF
     at ¶ 24.)

                                    5

1    On July 5th, Fischer reported the incident to Alta Regional

2 Services ("ALTA"), which coordinates services for developmentally

3 disabled individuals and administers placement of residents in

4 various care homes on behalf of the State of California

5 Department of Health and Human Services ("DHHS").  (PR-SUF at

6 ¶ 33-34.) John Redman ("Redman"), a representative of ALTA, spoke

7 with Fischer.  (Id. at ¶ 35.)  Fischer indicated to Redman that

8 Blanton had brandished a gun on the night of July 3rd and had

9 discharged the gun in the care facility.  (Id. at ¶ 36.)  ALTA

10 then initiated an investigation into Fischer's claims.  (Id. at

11 ¶ 37.)  That same day, Mr. Redman made a site visit and

12 interviewed Blanton.  (Id. at ¶ 38.)  When asked by the ALTA

13 representatives, Blanton denied that he discharged the gun.  (Id.

14 at ¶ 39.)

15    Redman called the SCSD as part of his investigation of

16 Fischer's complaints.  Officer Bricker returned Redman's call,

17 informing him that an accidental discharge did occur and a report

18 on the matter was being prepared.[7]  (Id. at ¶ 41.)

19    After learning of the police report and the SCSD conclusion

20 that the gun had been discharged, ALTA removed residents from

21 Blanton's care facility.  (Id. at ¶ 44.)

22 ///

23

---

24    [7] Blanton contends that the Officers initiated the
communications between the Officers and ALTA that led to the ALTA
25 hearing and subsequent revocation of his license.  (PR-SUF at
¶ 42.)  Review of the Record and Declarations does not provide a
26 reasonable factual basis for the Court to accept that conclusory
allegation. The Court is persuaded that Redman, on behalf of
27 ALTA, initiated communications after receiving a complaint from
Fischer and that the Officers were cooperative rather than
28 instigative.

1  Blanton appealed the removal, contending that no firearm was

2  discharged.  (Id. at ¶ 45.)

3      In October, ALTA held a hearing regarding the removal of

4  residents from the care home.  (Id. at ¶ 46.)  Blanton was

5  represented by counsel and presented evidence to support his

6  contention that the police reports were inaccurate and that he

7  did not discharge a gun in the care facility.  (Id. at ¶ 47.)

8  Officer Bricker and Officer King both testified at the hearing

9  and were subject to examination by ALTA and Blanton's counsel.

10  (Id. at ¶ 48.)  ALTA determined based on the hearing that the gun

11  had in fact been discharged, that Blanton was in violation of

12  applicable law and that the removal of residents was proper.[8]

13  (Id. at ¶ 51.) Blanton appealed the decision.  (Id. at ¶ 52.)

14      On February 7th, 2008, the California Department of Social

15  Services ("CDSS") held a subsequent administrative hearing to

16  consider Blanton's appeal from the ALTA decision.  (See generally

17  ECF No. 49, Ex. 3.(Department of Social Services Order

18  ("DSSO"))).  Blanton was again represented by counsel and

19  Defendants Fischer, Officer Bittle and Officer Bricker all

20  testified and were subject to cross-examination.  (DSSO at p. 2;

21  PR-SUF at ¶ 54-56.)

22  ///

23  ///

24

25  [8] Blanton objects that the alleged outcome of the ALTA
hearing is based on hearsay.  (PR-SUF at ¶ 51.)  The Court is
26  persuaded that the ALTA hearing concluded that Blanton discharged
his gun in the care facility.  However, this finding is not
27  necessary to the outcome of this case, because the issue was
relitigated in the CDSS proceeding and again the gun was found to
28  have been fired in the care facility by Blanton. (See DSSO Order,
ECF No. 49, Ex. 3.)

The Department of Social Services affirmed the ALTA findings in a written decision concluding that Blanton was in violation of applicable state codes and that his license to operate an adult care facility must be revoked. (DSSO at p. 14.) Specifically, the court held that, "As set forth in the Factual Findings and Legal Conclusions as a whole... the Department proved by a preponderance of the evidence that, on July 4, 2007, respondent [Blanton] discharged his gun in the licensed facility..." (Id.) Blanton did not seek judicial review of that decision. (Id. at ¶ 60.)

On July 9th, 2009, Blanton filed his complaint in this Court, with jurisdiction over this matter pursuant to 28 U.S.C. §1343, which confers jurisdiction on this Court to hear suits brought pursuant to 42 U.S.C. §1983. (ECF No. 2.) Jurisdiction is also conferred by 28 U.S.C. §1331. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over claims arising under state law.

In his complaint, Blanton argues the following: 1) that Defendants conspired to present false testimony to the Regional Center and Department of Social Services regarding Plaintiff, that 2) the SCSD failed to supervise, train or discipline the allegedly lying defendants, Officer Bricker, Officer Bittle, and Officer King, and that 3) the County of Sacramento was deliberately indifferent to SCSD's failure to train, supervise and discipline their employees.

///
///
///

Blanton raises the following causes of action: 1) that Defendants deprived him of his liberty interest under the Fourteenth Amendment Due Process Clause and under the California Constitution by unlawfully taking his license and thus his livelihood from him; 2) Defendants unlawfully deprived him of his property interest under the Fourteenth Amendment Due Process Clause and the California Constitution by taking his license and thus his property under false pretenses; 3) that Defendants violated his Second Amendment right to carry a gun; 4) that Defendants' actions, which led to revocation of his license, constituted a Taking without Just Compensation under the United State Constitution and the California Constitution; and 5) that Defendants intentionally inflicted emotional distress upon him.

Each and every one of Blanton's claims hinges on the contention that the police officers involved in this case conspired against him in an effort to conceal their original finding, which allegedly was that Blanton did not fire his gun on the night of July 3rd, 2007.

On October 25, 2011, Defendants filed the instant Motion for Summary Judgment.  Defendants seek first to dismiss Plaintiff's case on the basis of issue preclusion, arguing that the same issues were litigated in the state administrative hearings and that this Court is precluded from relitigating them.

///

///

///

///

///

Furthermore, Defendants claim that Plaintiff has failed to state

a cause of action against the moving County and Officer

Defendants because said Defendants are immune from civil

prosecution for their investigation and their testimony contained

in the police reports, as well as for their administrative

hearing testimonies.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary

judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  One of the

principal purposes of Rule 56 is to dispose of factually

unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 325 (1986).

The standard that applies to a motion for summary

adjudication is the same as that which applies to a motion for

summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.

ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine issue of
> material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).

1  If the moving party meets its initial responsibility, the
2  burden then shifts to the opposing party to establish that a
3  genuine issue as to any material fact actually does exist.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
6  253, 288-89 (1968).

7  In attempting to establish the existence of this factual
8  dispute, the opposing party must tender evidence of specific
9  facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
17 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
18 Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed."  Anderson, 477 U.S. at
24 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448,
25 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen
26 the moving party has carried its burden under Rule 56(c), its
27 opponent must do more than simply show that there is some
28 metaphysical doubt as to the material facts....

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.    Issue Preclusion**

Defendants argue that because the administrative hearing already determined that Officer Bricker's and Officer Bittle's testimonies were truthful, the issue underlying this case (whether Officer Bricker and Officer Bittle lied in their report) has already been litigated and is thus precluded from further adjudication. (<u>See</u> Motion for Summary Judgment, ECF No. 45, Page 6.)  Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980).

12

1    Under 28 U.S.C. §1738, federal courts must preclude claims
2  which have already received state court judgments.  Marrese v.
3  American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380
4  (1985).  Furthermore, that preclusive effect can extend to final
5  decisions of administrative tribunals, acting in a judicial or
6  quasi-judicial fashion.  University of Tennessee v. Elliott,
7  478 U.S. 788, 798-799 (1986) (preclusive effect extends to
8  administrative decisions in § 1983 actions); See also Murray v.
9  Alaska Airlines, 50 Cal. 4th 860, 867 (Cal. 2010) (discussing
10  collateral estoppel's application to administrative proceedings).
11  The Ninth Circuit has noted that, "Elliott requires us to give
12  preclusive effect, at a minimum, to the fact-finding of state
13  administrative tribunals." Miller v. County of Santa Cruz,
14  39 F.3d 1030, 1032 (9th Cir. 1994).  The "at a minimum" clause
15  reflects the Court's particular emphasis on protecting the fact-
16  finding process of state administrative tribunals.

17    However, the Court must first determine whether this
18  particular issue has already been properly adjudicated by the
19  state agencies.  Because the issue regarding whether the police
20  lied in their report was adjudicated in an administrative
21  hearing, the Court must first find that the California courts
22  would afford preclusive effect to the administrative agency's
23  proceeding.  Plaine v. McCabe, 797 F.2d 713, 719 (9th Cir. 1994).
24  This is because the courts want to ensure that the administrative
25  hearing provided sufficient safeguards to be equated with a state
26  court judgment.  Id.  If so, the Court will grant deference to
27  that determination and likewise determine that the issue has been
28  precluded.  Id.

As stated by the Ninth Circuit,

> The federal court must carefully review the state
> administrative proceeding to ensure that, at a minimum,
> it meets the state's own criteria necessary to require
> a court of that state to give preclusive effect to the
> state agency's decisions.  To do otherwise would run
> the risk of precluding relitigation of issues by
> parties who have had no fair opportunity to be heard.

Id.

California state courts utilize a two-part test to determine whether conclusions of a state administrative hearing are precluded from further judgment.  See People v. Sims, 32 Cal.3d 468, 479 (1982).  First, the hearing must meet the fairness standards set forth in United States v. Utah Construction & Mining, 384 U.S. 394, 422 (1966).[9]  Second, the administrative hearing must meet the traditional requirements for applying collateral estoppel in California.  Sims, 32 Cal.3d at 479.  If both parts of this test are satisfied with regard to the police report, the issue is precluded and the Motion for Summary Judgment will be granted as a matter of law in favor of the Defendants.  Id.

///
///
///
///
///
///
///
///

---

[9] This case was superseded by statute on other grounds and thus still applies to this case.

1       **1.   Utah Construction Standards**

2

3      The <u>Utah Construction</u> Standards, which were subsequently

4 approved in <u>Kremer v. Chemical Construction Co.</u>, 456 U.S. 461,

5 484-485 (1982), require that an administrative agency 1) act in a

6 judicial capacity, 2) resolve disputed issues of fact properly

7 before it, and 3) provide parties with an adequate opportunity to

8 litigate. <u>Utah</u>, 384 U.S. at 422; <u>See also</u> <u>Pacific Lumber Co. v.</u>

9 <u>State Water Resources Control Board</u>, 37 Cal. 4th, 921, 944 (2006)

10 ("Indicia of proceedings undertaken in a judicial capacity

11 include a hearing before an impartial decision maker; testimony

12 given under oath or affirmation; a party's ability to subpoena,

13 call, examine, and cross-examine witnesses, to introduce

14 documentary evidence, and to make oral and written argument; the

15 taking of a record of the proceeding; and a written statement of

16 reasons for the decision.")

17      Defendants argue (and Plaintiff does not refute) that all

18 three of these factors were satisfied by the administrative

19 hearings held by the ALTA and the CDSS.  Both were adversarial

20 proceedings before a neutral decision-maker with each party

21 represented by counsel.  (<u>See</u> RJN, Attachment #3, Exhibit C

22 (Written Order for the CDSS hearing); PR-SUF at ¶ 46-56.)  The

23 parties were allowed to present evidence and call, examine,

24 cross-examine and subpoena witnesses.  (<u>Id.</u>)  Testimonies were

25 submitted under oath, and a verbatim transcript of the CDSS

26 hearing was produced.  (<u>Id.</u> at Exhibit D.)

27 ///

28 ///

The Court therefore concludes both hearings satisfied the <u>Utah Construction</u> standards.[10]

### 2.   California Traditional Elements of Issue Preclusion

The California Supreme Court held that in order to apply issue preclusion to a fact-finding or judgment,

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  The party asserting collateral estoppel bears the burden of establishing these requirements.

<u>Lucido v. Superior Court</u>, 51 Cal. 3d 335, 341(1990); <u>See also</u> <u>People v. Garcia</u>, 39 Cal. 4th 1070, 1077 (Cal. 2006) (listing elements).  The Court now addresses each of these elements in turn.

///
///
///
///
///
///
///

---

[10] Blanton disputes specifics regarding what was said at the hearings.  However, Blanton does not dispute the fact that the hearings were judicially fair.  Specifically, Blanton does not contest that each hearing allowed for a neutral arbitrator, an opportunity for counsel, opportunities to present evidence, to thoroughly examine witnesses, etc.

### a. The issue is identical to that decided in a former proceeding

While the administrative hearings addressed the issue of license revocation, whereas this case pertains to violations of Constitutional rights, the underlying issue in both cases is precisely the same: did Defendants falsify their testimonies, as well as the reports, about whether Blanton discharged his firearm?

Blanton's contention in the administrative hearings was that his license should not be revoked because the Defendants had conspired together and falsified their reports and testimony to falsely claim that he had discharged his firearm in the residential facility on the night of July 3rd, 2007.

Here, Blanton alleges that because the Defendants conspired together and falsified their testimony to falsely claim that he discharged the firearm, they violated his rights under the federal Constitution, as well as various rights under state law.[11]

In this case, the administrative proceeding examined the Defendants and allowed cross-examination precisely to ensure that their police report was not fabricated.  This issue, central to all the contentions Plaintiff invokes in this case, is identical to that which was already determined.  See Lucido, 51 Cal.3d at 342; Sims, 32 Cal.3d at 485.

---

[11] In both his administrative hearings and in this case, Blanton has alleged a conspiracy but failed to state the reasons *why* Fischer, the Police and the Administrative agencies would all conspire against him.

17

### b.   Actually Litigated in the Former Proceeding


Plaintiff does not contest, and the record supports, that the issue pertaining to whether the police officers lied in their reports was already litigated before both ALTA and the California Department of Social Services.  (See PR-SUF at 45-59.)


### c.   Necessarily Decided in the Former Proceeding


While the language of the test uses the term "necessarily decided," courts have long held that estoppel applies so long as the issue subject to estoppel was not "entirely unnecessary" to the judgment in the initial proceeding.  Lucido, 531 Cal.3d at 342.  See e.g. 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 268, p. 710, and cases cited therein; see also Sims, supra, 32 Cal.3d at 484-485 (holding issue "necessarily decided" because determination of innocence by preponderance of evidence "necessarily" determines lack of proof beyond reasonable doubt.)

Here, the administrative proceedings' determinations that the police officers were not lying in their reports were central to their ultimate rulings against Blanton.  Had the administrative proceedings found that the police officers lied, they would only have Fischer's word as evidence of a fired weapon.  Certainly, the issue regarding whether the police lied was not "entirely unnecessary" in determining whether to revoke his license because the reports were strong evidence that the gun was in fact fired in the care facility.

///

18

**d.   The Parties Must Be in Privity or the Same Parties as were in the Administrative Proceedings**

Each of the parties herein were engaged in the first proceedings, with factual findings made in regard to each of them.  This element is clearly established.

As each of the prongs of the issue preclusion test are satisfied, the issue pertaining to whether the police lied in their reports is precluded from being relitigated here.  See Lucido, 51 Cal. 3d at 341; Garcia, 39 Cal. 4th at 1077.  The alleged untruthful reporting of Defendants Officer Bittle, Officer Bricker, Officer King and Fischer will not be readjudicated. Because this is the underlying basis for all of Plaintiff's claims, and because there are no other material issues of fact, the Court grants Defendants' Motion for Summary Judgment in full.

**B.   Officer Immunity**

Even if this Court were to find this action not subject to issue preclusion, it would still find the causes of action against the officers barred on immunity grounds.

Officers are immune from damages liability for actions brought on the basis of false testimony. Briscoe v. LaHue, 460 U.S. 325, 326 (1983).  Furthermore, the Ninth Circuit held that circumventing absolute witness immunity for police officers by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983.

19

1  <u>Franklin v. Terr</u>, 201 F.3d 1098, 1101 (9th Cir. 2000).

2  Accordingly, this Court will not allow damages liability against

3  Officers Bittle or Bricker.

4       Plaintiff invokes the Ninth Circuit ruling in <u>Harris v.</u>

5  <u>Roderick et al.</u>, 126 F.3d 1189, 1199-2000 (9th Cir. 1997), in

6  which immunity from suit is revoked from law enforcement

7  officials under the complaining witness exception.  Here,

8  Blanton's claim is based on his allegation that the police

9  officers initiated the contact with ALTA.  In <u>Harris</u>, the Ninth

10 Circuit held that officers who lied to the Court were not immune

11 from suit under Section 1983 if they functioned as a complaining

12 witness.  <u>Id.</u> (holding that while police officers are generally

13 entitled to absolute immunity for perjury committed in the course

14 of official proceedings, complaining witnesses who wrongfully

15 bring about a prosecution are not.)

16      A complaining witness is defined as one who initiates the

17 prosecution rather than being merely a witness.  <u>See Harris</u>,

18 126 F.3d at 1199, 2000.  If guilty of perjury, that witness will

19 not be immune from damages claims brought under Section 1983.

20      However, the Court holds that this exception does not apply

21 here for two reasons:  1) Because, as held above, the question of

22 whether the Officers committed perjury is precluded from

23 relitigation, and  2) as stated above (see <u>supra</u> at p. 4, n.7),

24 the Court is persuaded that the Officers did not initiate the

25 prosecution and that therefore the "complaining witness"

26 exception to witness immunity is not applicable to this case.

27 ///

28 ///

Not only are Officers Bittle and Bricker protected from suit due to the Court's finding of issue preclusion, but they are protected by absolute immunity from Section 1983 damages claims.

**C.   County Liability**

Because the Court finds that Officers Bittle and Bricker did not violate any laws, their supervisors cannot be held liable under any theory of vicarious liability.  Plaintiff alleges that the County was "deliberately indifferent to the violations at issue."  (Opposition to Summary Judgment, ECF No. 51, 14:18.)  However, the Court has dismissed the claim that the reports drafted by Officers Bricker and Bittle were falsely written on the grounds of issue preclusion.

A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978).  In order to establish liability for governmental entities under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation."  Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).  Likewise, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1235 (9th Cir. 1989).  Mere negligence in training or supervision, however, does not give rise to a <u>Monell</u> claim. <u>Id.</u>

Here, Blanton's claims fail both because his claims against the officers fail, as well as because his complaint has failed to sufficiently state supervisory liability to satisfy the pleading requirements of <u>Iqbal</u> and <u>Twombly</u>.  <u>Iqbal</u>, 556 U.S. at 677-680; <u>Twombly</u>, 556 U.S. at 555.  First, the evidence does not support Blanton's claims that the police officers lied or conspired against him and, in any event, the Court has determined that both issue preclusion and immunity bar Blanton's claims.  However, even excluding these issues, Blanton's supervisory liability claims lack factual basis and are conclusory recitations of the elements of a supervisory liability claim.  <u>See</u>, <u>e.g.</u>, <u>Twombly</u>, 556 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citation omitted, alteration in original)).

Therefore, the Court will not hold the County of Sacramento liable for any violations.

///

22

1

## CONCLUSION

2

3        As a matter of law, and for the reasons set forth above, the

4  Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED

5  in full.  The Clerk of the Court is directed to close this case.

6        IT IS SO ORDERED.

7
   Dated: July 6, 2012

8

9                                    _____

10                                   MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28