UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID BLANTON,

        Plaintiff,

   v.

COUNTY OF SACRAMENTO;
SACRAMENTO COUNTY SHERIFF'S
DEPARTMENT; CHRIS BITTLE;
DONALD BRICKER; and CRYSTAL
FISHER BRADNAX,

        Defendants.

No. 2:09-cv-01832-MCE-CKD

MEMORANDUM AND ORDER

----oo0oo----

    Before the Court is Defendants' Motion for Summary Judgment
and Summary Adjudication (ECF No. 45). For the reasons that
follow, the Motion will be granted in full.

///
///
///
///
///

1

1

**BACKGROUND**[1]

2

3      Plaintiff David Blanton ("Blanton") was a licensed Adult

4  Residential Administrator, who operated an adult residential care

5  facility. (First Amended Complaint ("FAC"), ECF No. 9,

6  Paragraph 12). Defendant Crystal Fischer Bradnax ("Fischer") was

7  employed by Blanton at his facility. (Id. at ¶ 13.) Either late

8  at night on July 3rd or early in the morning of July 4th, 2007,[2]

9  Blanton caught Fischer stealing cleaning products from the care

10 facility and spoke with her about the thefts. (Id.) Fischer was

11 sent home and placed on administrative leave without pay. (Id.)

12      Within hours, Fischer reported to the Sacramento County

13 Sheriff's Department ("SCSD") that Blanton had brandished and

14 accidentally discharged a firearm inside the residential home.

15 Specifically, she informed Officer Kenneth King ("Officer King")[3]

16 of the incident. (Id. at ¶ 15.) Officer King then contacted his

17 supervisor, Defendant Officer Donald Bricker ("Officer Bricker")

18 and requested a welfare check on the residents of the facility.

19 (Plaintiff's Response to Defendants' Statement of Undisputed

20 Facts ("PR-SUF"), ECF No. 51, Attachment 1, ¶ 9).

21 ///

22

23      [1] The following facts are the Court's determination of what
24  is undisputed based on its review of both Plaintiff's and
     Defendants' Statements of Facts and the Records cited therein.
25  For the purposes of this motion, all reasonable inferences are
     drawn in favor of the Plaintiff.

26      [2] All forthcoming dates are from the year 2007 unless
27  otherwise stated.

28      [3] Kenneth King was dismissed with prejudice from all causes
     of action. (ECF No. 57., Stipulation and Order.)

2

On July 4th, Officer Bricker and his Deputy Officer, Defendant Chris Bittle ("Officer Bittle"), went to the facility, interviewed Blanton and investigated his care facility. (Id. at ¶ 11.)  During the investigation, Officer Bricker took notes of his investigation and his interview with Blanton.  (PR-SUF at ¶ 18.)

According to Blanton, he did not admit to the police officers to have fired a gun in the facility.  (Id. at ¶ 12.) However, the police officers investigating the incident's reports indicate that Blanton did, in fact, admit to having accidentally discharged the firearm.[4]

In Officer King's July 4, 2007,report of his investigation of the incident, he reported that Fischer stated that, "[w]hile we were talking, Blanton picked up the gun and was putting the magazine in the handle when all of a sudden the gun went off.

///

///

---

[4] Blanton objects to the contents of the police reports on hearsay grounds, but does not dispute that the police arrived, investigated, and interviewed witnesses.  The Court overrules Blanton's hearsay objection to the police reports contained in ECF No. 49, Ex.2.  The police officers' statements and observations recorded in a police report are admissible, as is the summary of Blanton's statement made to Officer Bricker under the public-records hearsay exception contained in Fed. R. Evid. 803(8) and Cal. Evid. Code § 1280.  See, e.g., Colvin v. United States, 479 F.2d 998, 1003 (9th Cir. 1973) (Personal observations of police officers contained in the police reports are generally admissible); Rupf v. Yan, 85 Cal. App. 4th 411, 430 n.6 (Cal. App. 2000) (noting that "a police officer's report is admissible under Evidence Code section 1280 if it is based upon the observations of a public employee who had a duty to observe facts and report and record them correctly. []  Statements independently admissible, such as a party admission, contained in a police report are similarly admissible, despite their hearsay character."  (citations omitted)).

The bullet went through the entertainment center in the front room...” (Request for Judicial Notice[5] (“RJN”), ECF No. 49, Ex. 2 at 5.)  Consistent with Fischer’s description of the event, according to Bricker’s report,

> Blanton admitted that he was in the home earlier checking up on one of his employees and when he was leaving the house he picked up his gun from a cabinet shelf and the gun fired one round into the wooden entertainment center.  Blanton showed us where the bullet struck the wood entertainment center and showed us the wood debris on the floor. It appeared a single bullet struck the wood cabinet system and did not exit the house or travel into any other area of the home.

(Id. at 8-9.)  Officer Bittle also included a summary of Blanton’s statement to him, in which Blanton allegedly said, among other information about the incident, that:

> After I arrived tonight I placed the gun on the shelf of the entertainment center and removed the magazine to make it safe, I had the magazine in my pocket and the gun was just laying on the shelf by itself without a holster.

---

[5] Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts ‘capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned’), Defendants request the Court take judicial notice of several documents. (Request for Judicial Notice (“RJN”) (ECF No. 49, Att. 1-4.)  Specifically, Defendants ask the Court to take judicial notice of the: (1) Demand for Jury Trial, dated October 25, 2011, and signed by Attorney for Plaintiff (RJN, Att. 1); (2) Incident/Information Report, dated July 4, 2007, signed by Defendant Bricker and recorded in the Sacramento County Sheriff’s Department, Report Number 07-0036423SD (Id., Att. 2); (3) Order from the Department of Social Services Hearing, signed by Administrative Law Judge Marilyn A. Woollard and dated March 31, 2008 (Id., Att. 3); (4) Transcript for the Order from the Department of Social Services Hearing, dated February 7, 2008, and transcribed and signed by Heather R. Coiner (Id. at Att. 4). Defendants’ requests are unopposed and are the proper subject of judicial notice. See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record).  Accordingly, Defendants’ Request for Judicial Notice, (ECF No. 49, Att. 1-4.), is granted.

I picked the gun up and I must have had my finger on the trigger because the gun fired one round.  The bullet hit the wood entertainment center and caused wood to splinter onto the floor.

I was really surprised the gun fired because I had removed the Magazine and I didn't think it would fire without it, but I guess I was wrong.  After the gun fired my worker Crystal became pretty shaken up and I could tell she was concerned.  I told her to take the rest of the night off and I would stay at the home in her place.  She left and didn't say anything.

None of the residents were awake when the gun fired and none woke up after the incident.  The bullet hit the wood and stayed in the frame of the cabinet. After Crystal left I cleaned up a little, put my gun away and went to bed.

I did not point the gun towards Crystal and I never picked it up to show it to her I'm sure she knows I have the gun because I bring it with me every time I come to the house.

According to Defendants Officers Bittle and Bricker as well as the summary of Blanton's statement, Blanton informed them that the gun was in his bedroom.  (Bricker Decl. at ¶ 21.)  When they retrieved the gun after asking for Blanton's permission, they found it unsecured.  (Id. at ¶ 22.)

Officer Bricker and Officer Bittle concluded that Blanton's gun had discharged, but that no crime had been committed. (Bricker Decl. at ¶ 23.)  After Officer King spoke with Fischer, he created the incident report.[6]  (Id. at ¶ 23-24.)  Likewise, Officer Bricker completed his report within 24 hours after the interview with Blanton and the investigation of Blanton's care facility.  (Id. at ¶ 25.)

---

[6] Incident reports written by police officers are designed for record keeping and not for prosecution proceedings.  (PR-SUF at ¶ 24.)

On July 5th, Fischer reported the incident to Alta Regional Services ("ALTA"), which coordinates services for developmentally disabled individuals and administers placement of residents in various care homes on behalf of the State of California Department of Health and Human Services ("DHHS"). (PR-SUF at ¶ 33-34.) John Redman ("Redman"), a representative of ALTA, spoke with Fischer. (Id. at ¶ 35.) Fischer indicated to Redman that Blanton had brandished a gun on the night of July 3rd and had discharged the gun in the care facility. (Id. at ¶ 36.) ALTA then initiated an investigation into Fischer's claims. (Id. at ¶ 37.) That same day, Mr. Redman made a site visit and interviewed Blanton. (Id. at ¶ 38.) When asked by the ALTA representatives, Blanton denied that he discharged the gun. (Id. at ¶ 39.)

Redman called the SCSD as part of his investigation of Fischer's complaints. Officer Bricker returned Redman's call, informing him that an accidental discharge did occur and a report on the matter was being prepared.[7] (Id. at ¶ 41.)

After learning of the police report and the SCSD conclusion that the gun had been discharged, ALTA removed residents from Blanton's care facility. (Id. at ¶ 44.)

///

---

[7] Blanton contends that the Officers initiated the communications between the Officers and ALTA that led to the ALTA hearing and subsequent revocation of his license. (PR-SUF at ¶ 42.) Review of the Record and Declarations does not provide a reasonable factual basis for the Court to accept that conclusory allegation. The Court is persuaded that Redman, on behalf of ALTA, initiated communications after receiving a complaint from Fischer and that the Officers were cooperative rather than instigative.

1    Blanton appealed the removal, contending that no firearm was

2    discharged.  (Id. at ¶ 45.)

3         In October, ALTA held a hearing regarding the removal of

4    residents from the care home.  (Id. at ¶ 46.)  Blanton was

5    represented by counsel and presented evidence to support his

6    contention that the police reports were inaccurate and that he

7    did not discharge a gun in the care facility.  (Id. at ¶ 47.)

8    Officer Bricker and Officer King both testified at the hearing

9    and were subject to examination by ALTA and Blanton's counsel.

10   (Id. at ¶ 48.)  ALTA determined based on the hearing that the gun

11   had in fact been discharged, that Blanton was in violation of

12   applicable law and that the removal of residents was proper.[8]

13   (Id. at ¶ 51.) Blanton appealed the decision.  (Id. at ¶ 52.)

14        On February 7th, 2008, the California Department of Social

15   Services ("CDSS") held a subsequent administrative hearing to

16   consider Blanton's appeal from the ALTA decision.  (See generally

17   ECF No. 49, Ex. 3.(Department of Social Services Order

18   ("DSSO"))).  Blanton was again represented by counsel and

19   Defendants Fischer, Officer Bittle and Officer Bricker all

20   testified and were subject to cross-examination.  (DSSO at p. 2;

21   PR-SUF at ¶ 54-56.)

22   ///

23   ///

24

25        [8] Blanton objects that the alleged outcome of the ALTA
     hearing is based on hearsay.  (PR-SUF at ¶ 51.)  The Court is
26   persuaded that the ALTA hearing concluded that Blanton discharged
     his gun in the care facility.  However, this finding is not
27   necessary to the outcome of this case, because the issue was
     relitigated in the CDSS proceeding and again the gun was found to
28   have been fired in the care facility by Blanton. (See DSSO Order,
     ECF No. 49, Ex. 3.)

The Department of Social Services affirmed the ALTA findings in a written decision concluding that Blanton was in violation of applicable state codes and that his license to operate an adult care facility must be revoked. (DSSO at p. 14.) Specifically, the court held that, "As set forth in the Factual Findings and Legal Conclusions as a whole... the Department proved by a preponderance of the evidence that, on July 4, 2007, respondent [Blanton] discharged his gun in the licensed facility..." (Id.) Blanton did not seek judicial review of that decision. (Id. at ¶ 60.)

On July 9th, 2009, Blanton filed his complaint in this Court, with jurisdiction over this matter pursuant to 28 U.S.C. §1343, which confers jurisdiction on this Court to hear suits brought pursuant to 42 U.S.C. §1983. (ECF No. 2.) Jurisdiction is also conferred by 28 U.S.C. §1331. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over claims arising under state law.

In his complaint, Blanton argues the following: 1) that Defendants conspired to present false testimony to the Regional Center and Department of Social Services regarding Plaintiff, that 2) the SCSD failed to supervise, train or discipline the allegedly lying defendants, Officer Bricker, Officer Bittle, and Officer King, and that 3) the County of Sacramento was deliberately indifferent to SCSD's failure to train, supervise and discipline their employees.

///

///

///

1  Blanton raises the following causes of action: 1) that Defendants
2  deprived him of his liberty interest under the Fourteenth
3  Amendment Due Process Clause and under the California
4  Constitution by unlawfully taking his license and thus his
5  livelihood from him; 2) Defendants unlawfully deprived him of his
6  property interest under the Fourteenth Amendment Due Process
7  Clause and the California Constitution by taking his license and
8  thus his property under false pretenses; 3) that Defendants
9  violated his Second Amendment right to carry a gun; 4) that
10 Defendants' actions, which led to revocation of his license,
11 constituted a Taking without Just Compensation under the United
12 State Constitution and the California Constitution; and 5) that
13 Defendants intentionally inflicted emotional distress upon him.

14     Each and every one of Blanton's claims hinges on the
15 contention that the police officers involved in this case
16 conspired against him in an effort to conceal their original
17 finding, which allegedly was that Blanton did not fire his gun on
18 the night of July 3rd, 2007.

19     On October 25, 2011, Defendants filed the instant Motion for
20 Summary Judgment.  Defendants seek first to dismiss Plaintiff's
21 case on the basis of issue preclusion, arguing that the same
22 issues were litigated in the state administrative hearings and
23 that this Court is precluded from relitigating them.

24 ///
25 ///
26 ///
27 ///
28 ///

1  Furthermore, Defendants claim that Plaintiff has failed to state

2  a cause of action against the moving County and Officer

3  Defendants because said Defendants are immune from civil

4  prosecution for their investigation and their testimony contained

5  in the police reports, as well as for their administrative

6  hearing testimonies.

7

8                              **STANDARD**

9

10     The Federal Rules of Civil Procedure provide for summary

11  judgment when "the pleadings, depositions, answers to

12  interrogatories, and admissions on file, together with

13  affidavits, if any, show that there is no genuine issue as to any

14  material fact and that the moving party is entitled to a judgment

15  as a matter of law." Fed. R. Civ. P. 56(c). One of the

16  principal purposes of Rule 56 is to dispose of factually

17  unsupported claims or defenses. <u>Celotex Corp. v. Catrett</u>,

18  477 U.S. 317, 325 (1986).

19     The standard that applies to a motion for summary

20  adjudication is the same as that which applies to a motion for

21  summary judgment. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>

22  <u>ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

23          Under summary judgment practice, the moving party
            always bears the initial responsibility of informing
24          the district court of the basis for its motion, and
            identifying those portions of 'the pleadings,
25          depositions, answers to interrogatories, and admissions
            on file together with the affidavits, if any,' which it
26          believes demonstrate the absence of a genuine issue of
            material fact.
27

28  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.   Issue Preclusion**

Defendants argue that because the administrative hearing already determined that Officer Bricker's and Officer Bittle's testimonies were truthful, the issue underlying this case (whether Officer Bricker and Officer Bittle lied in their report) has already been litigated and is thus precluded from further adjudication. (<u>See</u> Motion for Summary Judgment, ECF No. 45, Page 6.)  Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980).

12

1    Under 28 U.S.C. §1738, federal courts must preclude claims

2 which have already received state court judgments.  Marrese v.

3 American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380

4 (1985).  Furthermore, that preclusive effect can extend to final

5 decisions of administrative tribunals, acting in a judicial or

6 quasi-judicial fashion.  University of Tennessee v. Elliott,

7 478 U.S. 788, 798-799 (1986) (preclusive effect extends to

8 administrative decisions in § 1983 actions); See also Murray v.

9 Alaska Airlines, 50 Cal. 4th 860, 867 (Cal. 2010) (discussing

10 collateral estoppel's application to administrative proceedings).

11 The Ninth Circuit has noted that, "Elliott requires us to give

12 preclusive effect, at a minimum, to the fact-finding of state

13 administrative tribunals." Miller v. County of Santa Cruz,

14 39 F.3d 1030, 1032 (9th Cir. 1994).  The "at a minimum" clause

15 reflects the Court's particular emphasis on protecting the fact-

16 finding process of state administrative tribunals.

17    However, the Court must first determine whether this

18 particular issue has already been properly adjudicated by the

19 state agencies.  Because the issue regarding whether the police

20 lied in their report was adjudicated in an administrative

21 hearing, the Court must first find that the California courts

22 would afford preclusive effect to the administrative agency's

23 proceeding.  Plaine v. McCabe, 797 F.2d 713, 719 (9th Cir. 1994).

24 This is because the courts want to ensure that the administrative

25 hearing provided sufficient safeguards to be equated with a state

26 court judgment.  Id.  If so, the Court will grant deference to

27 that determination and likewise determine that the issue has been

28 precluded.  Id.

As stated by the Ninth Circuit,

> The federal court must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions.  To do otherwise would run the risk of precluding relitigation of issues by parties who have had no fair opportunity to be heard.

Id.

California state courts utilize a two-part test to determine whether conclusions of a state administrative hearing are precluded from further judgment.  See People v. Sims, 32 Cal.3d 468, 479 (1982).  First, the hearing must meet the fairness standards set forth in United States v. Utah Construction & Mining, 384 U.S. 394, 422 (1966).[9]  Second, the administrative hearing must meet the traditional requirements for applying collateral estoppel in California.  Sims, 32 Cal.3d at 479.  If both parts of this test are satisfied with regard to the police report, the issue is precluded and the Motion for Summary Judgment will be granted as a matter of law in favor of the Defendants.  Id.

///
///
///
///
///
///
///
///

---

[9] This case was superseded by statute on other grounds and thus still applies to this case.

14

1      **1.   Utah Construction Standards**

2

3      The Utah Construction Standards, which were subsequently

4   approved in Kremer v. Chemical Construction Co., 456 U.S. 461,

5   484-485 (1982), require that an administrative agency 1) act in a

6   judicial capacity, 2) resolve disputed issues of fact properly

7   before it, and 3) provide parties with an adequate opportunity to

8   litigate. Utah, 384 U.S. at 422; See also Pacific Lumber Co. v.

9   State Water Resources Control Board, 37 Cal. 4th, 921, 944 (2006)

10  ("Indicia of proceedings undertaken in a judicial capacity

11  include a hearing before an impartial decision maker; testimony

12  given under oath or affirmation; a party's ability to subpoena,

13  call, examine, and cross-examine witnesses, to introduce

14  documentary evidence, and to make oral and written argument; the

15  taking of a record of the proceeding; and a written statement of

16  reasons for the decision.")

17      Defendants argue (and Plaintiff does not refute) that all

18  three of these factors were satisfied by the administrative

19  hearings held by the ALTA and the CDSS.  Both were adversarial

20  proceedings before a neutral decision-maker with each party

21  represented by counsel.  (See RJN, Attachment #3, Exhibit C

22  (Written Order for the CDSS hearing); PR-SUF at ¶ 46-56.)  The

23  parties were allowed to present evidence and call, examine,

24  cross-examine and subpoena witnesses.  (Id.)  Testimonies were

25  submitted under oath, and a verbatim transcript of the CDSS

26  hearing was produced.  (Id. at Exhibit D.)

27  ///

28  ///

15

The Court therefore concludes both hearings satisfied the <u>Utah Construction</u> standards.[10]

###    2.   **California Traditional Elements of Issue Preclusion**

The California Supreme Court held that in order to apply issue preclusion to a fact-finding or judgment,

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. The party asserting collateral estoppel bears the burden of establishing these requirements.

<u>Lucido v. Superior Court</u>, 51 Cal. 3d 335, 341(1990); <u>See also</u> <u>People v. Garcia</u>, 39 Cal. 4th 1070, 1077 (Cal. 2006) (listing elements). The Court now addresses each of these elements in turn.

///

///

///

///

///

///

///

---

[10] Blanton disputes specifics regarding what was said at the hearings. However, Blanton does not dispute the fact that the hearings were judicially fair. Specifically, Blanton does not contest that each hearing allowed for a neutral arbitrator, an opportunity for counsel, opportunities to present evidence, to thoroughly examine witnesses, etc.

### a.   The issue is identical to that decided in a former proceeding

While the administrative hearings addressed the issue of license revocation, whereas this case pertains to violations of Constitutional rights, the underlying issue in both cases is precisely the same: did Defendants falsify their testimonies, as well as the reports, about whether Blanton discharged his firearm?

Blanton's contention in the administrative hearings was that his license should not be revoked because the Defendants had conspired together and falsified their reports and testimony to falsely claim that he had discharged his firearm in the residential facility on the night of July 3rd, 2007.

Here, Blanton alleges that because the Defendants conspired together and falsified their testimony to falsely claim that he discharged the firearm, they violated his rights under the federal Constitution, as well as various rights under state law.[11]

In this case, the administrative proceeding examined the Defendants and allowed cross-examination precisely to ensure that their police report was not fabricated.  This issue, central to all the contentions Plaintiff invokes in this case, is identical to that which was already determined.  See Lucido, 51 Cal.3d at 342; Sims, 32 Cal.3d at 485.

---

[11] In both his administrative hearings and in this case, Blanton has alleged a conspiracy but failed to state the reasons *why* Fischer, the Police and the Administrative agencies would all conspire against him.

17

1             **b.   Actually Litigated in the Former Proceeding**

2

3        Plaintiff does not contest, and the record supports, that

4   the issue pertaining to whether the police officers lied in their

5   reports was already litigated before both ALTA and the California

6   Department of Social Services.  (<u>See</u> PR-SUF at 45-59.)

7

8             **c.   Necessarily Decided in the Former Proceeding**

9

10       While the language of the test uses the term "necessarily

11  decided," courts have long held that estoppel applies so long as

12  the issue subject to estoppel was not "entirely unnecessary" to

13  the judgment in the initial proceeding.  <u>Lucido</u>, 531 Cal.3d at

14  342.  <u>See</u> <u>e.g.</u> 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment,

15  § 268, p. 710, and cases cited therein; <u>see</u> also <u>Sims</u>, <u>supra</u>,

16  32 Cal.3d at 484-485 (holding issue "necessarily decided" because

17  determination of innocence by preponderance of evidence

18  "necessarily" determines lack of proof beyond reasonable doubt.)

19       Here, the administrative proceedings' determinations that

20  the police officers were not lying in their reports were central

21  to their ultimate rulings against Blanton.  Had the

22  administrative proceedings found that the police officers lied,

23  they would only have Fischer's word as evidence of a fired

24  weapon.  Certainly, the issue regarding whether the police lied

25  was not "entirely unnecessary" in determining whether to revoke

26  his license because the reports were strong evidence that the gun

27  was in fact fired in the care facility.

28  ///

18

### d. The Parties Must Be in Privity or the Same Parties as were in the Administrative Proceedings

Each of the parties herein were engaged in the first proceedings, with factual findings made in regard to each of them. This element is clearly established.

As each of the prongs of the issue preclusion test are satisfied, the issue pertaining to whether the police lied in their reports is precluded from being relitigated here. See Lucido, 51 Cal. 3d at 341; Garcia, 39 Cal. 4th at 1077. The alleged untruthful reporting of Defendants Officer Bittle, Officer Bricker, Officer King and Fischer will not be readjudicated. Because this is the underlying basis for all of Plaintiff's claims, and because there are no other material issues of fact, the Court grants Defendants' Motion for Summary Judgment in full.

## B. Officer Immunity

Even if this Court were to find this action not subject to issue preclusion, it would still find the causes of action against the officers barred on immunity grounds.

Officers are immune from damages liability for actions brought on the basis of false testimony. Briscoe v. LaHue, 460 U.S. 325, 326 (1983). Furthermore, the Ninth Circuit held that circumventing absolute witness immunity for police officers by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983.

1  Franklin v. Terr, 201 F.3d 1098, 1101 (9th Cir. 2000).

2  Accordingly, this Court will not allow damages liability against

3  Officers Bittle or Bricker.

4      Plaintiff invokes the Ninth Circuit ruling in Harris v.

5  Roderick et al., 126 F.3d 1189, 1199-2000 (9th Cir. 1997), in

6  which immunity from suit is revoked from law enforcement

7  officials under the complaining witness exception.  Here,

8  Blanton's claim is based on his allegation that the police

9  officers initiated the contact with ALTA.  In Harris, the Ninth

10  Circuit held that officers who lied to the Court were not immune

11  from suit under Section 1983 if they functioned as a complaining

12  witness.  Id. (holding that while police officers are generally

13  entitled to absolute immunity for perjury committed in the course

14  of official proceedings, complaining witnesses who wrongfully

15  bring about a prosecution are not.)

16      A complaining witness is defined as one who initiates the

17  prosecution rather than being merely a witness.  See Harris,

18  126 F.3d at 1199, 2000.  If guilty of perjury, that witness will

19  not be immune from damages claims brought under Section 1983.

20      However, the Court holds that this exception does not apply

21  here for two reasons:  1) Because, as held above, the question of

22  whether the Officers committed perjury is precluded from

23  relitigation, and  2) as stated above (see supra at p. 4, n.7),

24  the Court is persuaded that the Officers did not initiate the

25  prosecution and that therefore the "complaining witness"

26  exception to witness immunity is not applicable to this case.

27  ///

28  ///

20

Not only are Officers Bittle and Bricker protected from suit due
to the Court's finding of issue preclusion, but they are
protected by absolute immunity from Section 1983 damages claims.

**C.   County Liability**

Because the Court finds that Officers Bittle and Bricker did
not violate any laws, their supervisors cannot be held liable
under any theory of vicarious liability.  Plaintiff alleges that
the County was "deliberately indifferent to the violations at
issue."  (Opposition to Summary Judgment, ECF No. 51, 14:18.)
However, the Court has dismissed the claim that the reports
drafted by Officers Bricker and Bittle were falsely written on
the grounds of issue preclusion.

A government entity may not be held liable under 42 U.S.C.
§ 1983, unless a policy, practice, or custom of the entity can be
shown to be a moving force behind a violation of constitutional
rights.  Monell v. Dep't of Soc. Servs. of the City of New York,
436 U.S. 658, 694 (1978).  In order to establish liability for
governmental entities under Monell, a plaintiff must prove
"(1) that [the plaintiff] possessed a constitutional right of
which [s]he was deprived; (2) that the municipality had a policy;
(3) that this policy amounts to deliberate indifference to the
plaintiff's constitutional right; and (4) that the policy is the
moving force behind the constitutional violation."  Plumeau v.
Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.
1997) (internal quotation marks and citation omitted; alterations
in original).

21

1  Failure to train may amount to a policy of "deliberate
2  indifference," if the need to train was obvious and the failure
3  to do so made a violation of constitutional rights likely. <u>City</u>
4  <u>of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).  Likewise, a
5  failure to supervise that is "sufficiently inadequate" may amount
6  to "deliberate indifference." <u>Davis v. City of Ellensburg</u>,
7  869 F.2d 1230, 1235 (9th Cir. 1989).  Mere negligence in training
8  or supervision, however, does not give rise to a <u>Monell</u> claim.
9  <u>Id.</u>

10      Here, Blanton's claims fail both because his claims against
11  the officers fail, as well as because his complaint has failed to
12  sufficiently state supervisory liability to satisfy the pleading
13  requirements of <u>Iqbal</u> and <u>Twombly</u>.  <u>Iqbal</u>, 556 U.S. at 677-680;
14  <u>Twombly</u>, 556 U.S. at 555.  First, the evidence does not support
15  Blanton's claims that the police officers lied or conspired
16  against him and, in any event, the Court has determined that both
17  issue preclusion and immunity bar Blanton's claims.  However,
18  even excluding these issues, Blanton's supervisory liability
19  claims lack factual basis and are conclusory recitations of the
20  elements of a supervisory liability claim. <u>See</u>, <u>e.g.</u>, <u>Twombly</u>,
21  556 U.S. at 555 ("a plaintiff's obligation to provide the
22  'grounds' of his 'entitle[ment] to relief' requires more than
23  labels and conclusions, and a formulaic recitation of the
24  elements of a cause of action will not do" (citation omitted,
25  alteration in original)).

26      Therefore, the Court will not hold the County of Sacramento
27  liable for any violations.
28  ///

1

**CONCLUSION**

2

3        As a matter of law, and for the reasons set forth above, the

4   Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED

5   in full.  The Clerk of the Court is directed to close this case.

6        IT IS SO ORDERED.

7
    Dated: July 6, 2012

8

9                                     _____

10                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28